Blake Wilkie, Esq.
**LLG National Law Group P.C.**
Phoenix Corporate Tower
3003 N. Central Avenue, Suite 685
Phoenix, AZ 85012
T: (602) 960-9400
E: Blake.wilkie12@gmail.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **KELLY VANESSA WOODS,** individually and as representative of the **Estate of Messiah Deasure-Shamyl McMillian**<br><br>       Plaintiff,<br><br>vs.<br><br>**CITY OF CHANDLER**, a municipal corporation; **CHANDLER POLICE DEPARTMENT**, a subdivision of the City of Chandler; and **DOES I–XX**<br>       Defendants. | Case No.: No. CV-_____-PHX<br><br><br>**COMPLAINT IN A CIVIL ACTION** |

KELLY VANESSA WOODS ("Plaintiff"), individually and as Personal Representative of the Estate of Messiah Deasure-Shamyl McMillian, deceased ("Messiah", "Decedent"), by and through undersigned counsel, states as follows for her Complaint and Causes of Action against Defendants City of Chandler, a political subdivision of the State of Arizona; Chandler Police Department; and DOES I–XX, inclusive:

### INTRODUCTION

1. This case arises from the fatal shooting of Messiah Deasure-Shamyl McMillian, a young man suffering from schizophrenia, who was killed by Chandler police officers during a mental health crisis on March 20, 2025. Despite advance warnings from his mother that law-enforcement intervention could escalate his condition, and despite requests for mental health

assistance rather than armed response, officers arrived without crisis-trained personnel and rapidly escalated the encounter. Within moments, and without attempting any less lethal or de-escalation measures, officers used deadly force.

2. Messiah was not committing a violent crime. He was in psychological distress, partially clothed, barefoot, and in need of care, not force. The events that unfolded outside his grandmother's home transformed a call for help into a preventable loss of life.

3. Plaintiff brings this action to seek accountability for the wrongful death of her son, to address the excessive and unreasonable use of force employed against him, and to vindicate the constitutional rights guaranteed by the Fourth and Fourteenth Amendments. This case challenges not only the actions of the officers involved, but the policies, training, and practices that allowed a mental health crisis to end in tragedy.

**NATURE OF THE ACTION**

4. This is a civil action arising out of the fatal shooting of Decedent during a police response to a domestic disturbance and mental health crisis on March 20, 2025, outside a residence on Commonwealth Avenue near Hamilton Street, Chandler, Arizona.

5. Plaintiff seeks damages and all other relief available under Arizona law and federal law based on wrongful death, negligence, excessive use of force, and constitutional violations under 42 U.S.C. § 1983, including violations of the Fourth and Fourteenth Amendments.

**PARTIES**

6. Plaintiff Kelly Vanessa Woods is a resident of Maricopa County, Arizona. Plaintiff is the mother of Messiah Deasure-Shamyl McMillian and the duly authorized Personal Representative of his Estate. Plaintiff brings this action on behalf of herself, the statutory beneficiaries, and the Estate of the Decedent pursuant to A.R.S. § 12-612.

7. Defendant City of Chandler is a political subdivision of the State of Arizona. Defendant Chandler Police Department is a subdivision of the City of Chandler. Both are responsible for the acts and omissions of their employees acting within the scope of employment under the doctrine of respondeat superior.

8. At all relevant times, the involved officers and other personnel were employees, agents, and/or representatives of the City of Chandler and/or Chandler Police Department and were acting within the course and scope of their employment. The City of Chandler is responsible for the acts and omissions of its employees acting within the scope of employment under the doctrine of respondeat superior.

9. Defendants DOES I–XX are individuals and/or entities whose identities are presently unknown to Plaintiff, including but not limited to involved officers, supervisors, dispatch personnel, training personnel, and policymakers responsible for the acts and omissions alleged herein. Plaintiff will amend this Complaint when their identities are ascertained.

**JURISDICTION AND VENUE**

10. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (a)(4), because those claims arise under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, in Maricopa County, Arizona, and because Defendants reside in this District. Assignment to the Phoenix Division is proper under LRCiv 77.1(a) because the events giving rise to this action occurred in Maricopa County.

12. This Court has jurisdiction over Plaintiff's claims for attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

## APPLICABLE TO ALL COUNTS

13. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 14 of this Complaint as though fully set forth herein.

14. On March 20, 2025, at approximately 12:15 p.m., Defendant CHANDLER POLICE DEPARTMENT officers, including DOES I–X, unlawfully and unreasonably seized Messiah outside a residence near Commonwealth Avenue and Hamilton Street in Chandler, Arizona.

15. At all relevant times, Messiah was experiencing a documented mental health crisis. Prior to officers' arrival, Plaintiff had informed emergency dispatch that Decedent Messiah suffered from schizophrenia and specifically warned that an armed police response could escalate his condition. Plaintiff requested mental health assistance rather than a traditional law-enforcement response.

16. Despite this advance notice, Defendants responded with multiple armed officers and without behavioral health professionals, crisis-intervention clinicians, or other mental health resources.

17. Upon arriving at the scene, police saw that Decedent was shirtless, wearing only basketball shorts and socks, visibly distressed, and holding a kitchen knife. According to witness accounts, Decedent was engaging in self-harm and was not threatening officers or any other individuals at the time officers arrived. Video evidence clearly shows the Decedent holding a knife towards himself, almost in a confused manner.

18. Within seconds of making contact, Defendants shouted commands at Decedent and rapidly escalated the encounter. When Decedent allegedly moved forward while still holding the knife, at least one Defendant officer discharged a firearm, striking Decedent.

19. The officer that shot the decedent, Officer Gressley was an Officer-in-Training ("OIT") and had been employed by the Chandler Police Department for approximately four months at the time of the incident. (Exhibit A) Despite his limited tenure and trainee status, Officer Gressley was deployed to respond to a known mental health crisis involving an individual experiencing a psychiatric emergency.

20. Defendants' use of deadly force was excessive and unreasonable under the circumstances. At the time of the shooting, Decedent posed no immediate threat of death or serious bodily injury to officers or others, and Defendants failed to employ or even attempt less-lethal alternatives, including tasers, distance-creating tactics, de-escalation techniques, or crisis-intervention strategies.

21. As a result of the shooting, Decedent sustained catastrophic gunshot wounds, endured extreme physical pain and suffering, and was rendered critically injured. He was transported to a local hospital, where he was pronounced dead shortly thereafter.

22. After Decedent was shot and incapacitated, Defendants failed to provide timely and adequate medical care. On information and belief, officers delayed meaningful life-saving

measures while Decedent bled profusely at the scene. Witness video footage depicts Decedent bleeding extensively while confused and nonresponsive, and further depicts officers administering CPR only after Decedent was no longer responsive, with no emergency medical personnel visible.

23. Defendants' delay and denial of prompt medical aid further contributed to Decedent's injuries and death and caused Plaintiff extreme emotional distress.

24. Moreover, there are factual inconsistencies between witness accounts and those accounts of the officers in the Police Records. These witness account further supports that Messiah was engaging in self-harm during a mental health crisis and was not threatening police officers or others at the time force was used.

25. According to the Detective Narrative authored by Detective M. Benzon (Author P17220), dated March 26, 2025, police records state that Messiah was "threatening himself and others with a knife." (Exhibit B) This account, set forth in the investigative narrative and referenced in the attached exhibit, is materially inconsistent with civilian witness statements, including those mentioned above, contained in the same police records, which uniformly report that Messiah was harming himself, was in visible psychological distress, and was not threatening police officers or directing the knife toward them at any time prior to the shooting.

26. As a direct and proximate result of Defendants' wrongful acts and omissions, Decedent sustained fatal injuries and died shortly thereafter. This is because, Defendants responded to a known mental health crisis with armed officers despite advance warnings from Plaintiff that Decedent suffered from schizophrenia and that a police response could escalate his condition. Defendants failed to employ de-escalation techniques, crisis-intervention

strategies, or behavioral-health resources, and instead rapidly escalated the encounter. Defendants discharged deadly force against Decedent without first attempting less-lethal alternatives and without an objectively reasonable basis to believe Decedent posed an immediate threat of death or serious bodily injury to officers or others. Defendants further failed to provide timely and adequate medical care after Decedent was shot, allowing him to bleed profusely before meaningful life-saving measures were undertaken.

27. Plaintiff has suffered damages recoverable under Arizona's wrongful-death statutes, including loss of companionship, emotional distress, grief, and mental anguish.

**COUNT ONE – NEGLIGENCE**
**(Against All Defendants)**

28. Plaintiff incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

29. At all relevant times, Defendants owed Decedent a duty of care to act reasonably, prudently, and within the bounds of the law, including a duty to respond appropriately to a known mental health crisis, to employ de-escalation techniques, to avoid unnecessary escalation, and to refrain from the use of unreasonable or excessive force.

30. Defendants breached their duty of care by, among other acts and omissions, responding to a known and warned about psychiatric emergency without behavioral-health resources, failing to utilize de-escalation or less-lethal alternatives, employing negligent pre-shooting tactics, discharging a firearm without justification, and failing to timely provide adequate medical care after Decedent was shot.

31. Defendants' negligent acts and omissions were the direct and proximate cause of Decedent's catastrophic injuries and death.

32. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered severe emotional distress, grief, mental anguish, and loss of companionship, love, care, guidance, and society.

33. Plaintiff has also incurred and will continue to incur funeral expenses, medical expenses, loss of financial support, and other damages recoverable under Arizona law.

**COUNT TWO**
**NEGLIGENCE – NEGLIGENT TRAINING, SUPERVISION, AND POLICY FAILURES**
**(State Law – Against City of Chandler and Chandler Police Department)**

34. Plaintiff incorporates by reference Paragraphs 1 through 56 as though fully set forth herein.

35. At all relevant times, Defendants City of Chandler and Chandler Police Department owed Decedent and Plaintiff a duty to exercise reasonable care in the hiring, training, supervision, retention, and discipline of police officers entrusted with the use of deadly force.

36. Defendants further owed a duty to adopt, implement, and enforce reasonable policies, practices, and training sufficient to protect members of the public from foreseeable harm, including harm arising from police encounters with individuals experiencing known mental health crises.

37. These duties included, but were not limited to, providing adequate training and supervision concerning:

a. recognition of psychiatric emergencies;

b. crisis-intervention and de-escalation tactics;

c. appropriate use of less-lethal alternatives; and

d. lawful limitations on the use of deadly force when confronting individuals in mental distress.

38. Defendants breached their duties by failing to adequately train and supervise officers responding to mental-health calls, by maintaining deficient or ineffective policies governing such responses, and by permitting officers to respond to known psychiatric crises without appropriate behavioral-health support or de-escalation protocols.

39. Defendants knew or reasonably should have known that their failure to provide adequate mental-health training and policies created a foreseeable and unreasonable risk that officers would escalate encounters and use deadly force unnecessarily.

40. Defendants' negligent acts and omissions were a substantial factor in causing officers to respond to Decedent's mental-health crisis with immediate armed confrontation rather than de-escalation or less-lethal alternatives.

41. Specifically, at all relevant times, and as reflected in police records attached as Exhibit A, Officer Gressley was an Officer-in-Training ("OIT") and had been employed by the Chandler Police Department for approximately four months at the time of the incident. Despite his limited tenure and trainee status, Officer Gressley was deployed to respond to a known mental health crisis involving an individual experiencing a psychiatric emergency. Defendants knew or should have known that assigning an OIT officer with minimal experience to a volatile behavioral health call, without adequate supervision, training, or crisis-intervention support, created a foreseeable and unreasonable risk of harm. This failure in hiring, training, supervision, and deployment practices directly and proximately contributed to the unconstitutional use of force and the fatal injuries sustained by Messiah.

42. As a direct and proximate result of Defendants' negligence, Decedent was shot and killed during a police response that lacked reasonable crisis-intervention measures.

43. As a further direct and proximate result, Plaintiff suffered the wrongful death of her son and sustained severe emotional distress, grief, loss of companionship, and other damages recoverable under Arizona law.

44. Defendants are liable for the acts and omissions of their employees committed within the course and scope of employment under the doctrine of respondeat superior.

## COUNT THREE– WRONGFUL DEATH
### (A.R.S. § 12-611 et seq.; Against All Defendants)

45. Plaintiff incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

46. Defendants' wrongful acts, omissions, negligence, and misconduct caused the death of Decedent within the meaning of Arizona's wrongful-death statutes.

47. Decedent's death was unnecessary, violent, and preventable, and occurred as a direct and proximate result of Defendants' conduct.

48. As a consequence of Decedent's death, Plaintiff has suffered and continues to suffer extreme grief, sorrow, anguish, emotional distress, shock, and loss of companionship.

49. Plaintiff has been deprived of the love, affection, care, guidance, companionship, support, and benefits of the family relationship that Decedent would have provided.

50. Plaintiff is entitled to recover all damages available under Arizona law, including economic and non-economic damages, pursuant to A.R.S. § 12-612.

## COUNT FOUR – EXCESSIVE FORCE
### (42 U.S.C. § 1983 – Fourth Amendment; Against Individual Defendants)

51. Plaintiff incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

52. Defendants seized Decedent within the meaning of the Fourth Amendment when they confronted him and used deadly force against him.

53. At the time force was used, Decedent was experiencing a mental health crisis, was partially unclothed, and, according to witness accounts, was not posing an immediate threat of death or serious bodily injury to officers or others.

54. Defendants' use of deadly force was excessive, unreasonable, and objectively unjustified under the totality of the circumstances.

55. Defendants' conduct violated Decedent's clearly established constitutional right to be free from unreasonable seizures and excessive force under the Fourth Amendment.

56. As a direct and proximate result of Defendants' unconstitutional conduct, Decedent suffered severe pain and suffering and was killed, and Plaintiff suffered the damages described herein.

**COUNT FIVE – FAILURE TO PROVIDE MEDICAL CARE**
**(42 U.S.C. § 1983 – Fourth and Fourteenth Amendments; Against Individual Defendants)**

57. Plaintiff incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

58. After Decedent was shot and incapacitated, Defendants had a constitutional duty to provide or secure timely and adequate medical care.

59. Defendants' failure to promptly summon or render adequate medical care to Decedent after he was shot and seized was objectively unreasonable under the totality of the circumstances. Defendants delayed and denied prompt medical assistance while Decedent bled profusely at the scene, despite their notice of his obvious and serious medical needs.

60. Defendants' conduct violated Decedent's rights under the Fourth Amendment to objectively reasonable medical care following his seizure and, in the alternative, his rights under the Fourteenth Amendment.

61. The delay and denial of medical care caused additional pain and suffering and contributed to Decedent's death.

## COUNT SIX – MUNICIPAL LIABILITY
### (42 U.S.C. § 1983 – Monell; Against City of Chandler)

62. Plaintiff incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

63. At all relevant times, the unconstitutional acts and omissions of the individual Defendants were committed pursuant to the policies, customs, practices, and training deficiencies of Defendant City of Chandler.

64. Defendant City of Chandler failed to adequately train, supervise, and discipline its officers regarding de-escalation, crisis intervention, use of deadly force, and provision of post-shooting medical care.

65. These failures constituted deliberate indifference and were a moving force behind the constitutional violations and wrongful death of Decedent.

## DAMAGES

66. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages including, but not limited to, emotional distress, grief, loss of companionship, loss of support, funeral expenses, medical expenses, and other economic and non-economic losses.

67. Plaintiff seeks compensatory damages in an amount to be proven at trial, but in excess of $10,000,000.00.

68. Plaintiff further seeks all damages available under federal and Arizona law.

## PRAYER FOR RELIEF

69. WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. For compensatory damages in an amount to be determined at trial;

b. For damages recoverable under Arizona's wrongful-death statutes

c. For damages under 42 U.S.C. § 1983;

d. For costs and attorneys' fees pursuant to 42 U.S.C. § 1988;

e. For pre-judgment and post-judgment interest as allowed by law; and

f. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

70. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this June 10, 2026.



Blake Wilkie, Esq.
**LLG NATIONAL LAW GROUP P.C.**
5635 N. Scottsdale Road,
Suite 170 – W2
Scottsdale, Arizona 85250
T: (520) 471-8333
E: Blake.wilkie12@gmail.com
*Attorney for Plaintiff*

      _/s/_ *Nawal Ramay*_____
Nawal Ramay, Esq.
**LLG NATIONAL LAW GROUP, LLC**
Beowulf Building
1814 East Route 70, Suite 323
Marlton, NJ 08053
T: (856) 652-2000
E: nawal.ramay@llgnational.com
*Attorney for Plaintiff*
*Pro Hac Vice Application Forthcoming*


      _/s/_ *Robert S. Mactavish*_____
Robert S. Mactavish, Esq.
Florida Bar No.: 0596388
**LLG NATIONAL LAW GROUP, LLC**
Phoenix Corporate Tower
3003 N. Central Avenue, Suite 685
Phoenix, AZ 85012
P: 575-517-6542
E: robert.mactavish@llgnational.com
*Attorney for Plaintiff*
*Pro Hac Vice Application Forthcoming*